**PARKER LAW FIRM, P.L.C.**
ATTORNEYS AT LAW
11801 North Tatum Boulevard, Suite 229♦ Phoenix, Arizona 85028
Telephone: (602) 257-8100 ♦ Facsimile: (602) 257-8110
John D. Parker, II, #015955
jparker@ptlaw.net
*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Hapag-Lloyd (America) LLC, a Delaware limited liability company, as agent for Hapag-Lloyd Aktiengesellschaft, Hamburg, a foreign corporation<br><br>Plaintiff,<br><br>v.<br><br>Astar Barbershop, an Arizona limited liability company; Doe 1 through 20,<br><br>Defendants. | Case No.<br><br>**COMPLAINT** |

Plaintiff, for its Complaint, alleges as follows:

### General Allegations

1. The jurisdiction of this Court is founded on the admiralty or maritime character of the claim. This is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1333.

2. Hapag-Lloyd (America) LLC, as agent for Hapag-Lloyd Aktiengesellschaft, Hamburg, a foreign corporation (hereinafter "Plaintiff") is a limited liability company duly organized and existing pursuant to the laws of the state of Delaware, with offices and principal place of business located at 3 Ravinia Drive Suite 1600 Atlanta, Georgia 30346.

3. Astar Barbershop (hereinafter "Defendant") is an Arizona limited liability company, is a limited liability company duly organized and existing pursuant to the laws of the state of Arizona, with offices and principal place of business located at 6520 W. Happy Valley Rd., Suite B105, Glendale, Arizona 85310.

4. Does 1 through 10 are fictitious defendants whose true names, identities and status are presently unknown to Plaintiff and will be substituted when they become known.

5. Plaintiff sues on its own behalf and as agent and trustee on behalf of any other party who may now have or hereinafter acquire an interest in this action.

## As and for a First Cause of Action

6. Plaintiff realleges the allegations set forth in paragraphs 1 through 5 and incorporates them herein by reference.

7. On or about October 7, 2022 certain goods belonging to the Defendant were delivered to Plaintiff who arranged and assumed common carrier responsibility to transport Defendant's goods via ocean freight and via intermodal means appurtenant thereto, to the port(s) of final destination designated by Defendant pursuant to the Bill of Lading, which served as the contract of carriage entered into between Plaintiff and Defendant (see **Exhibit 1**- Sea Waybill - Terms and Conditions).

8. Pursuant to the Bill of Lading documents attached as Exhibit "A" all of the named Defendant(s) were and are within the ambit of the definition of "Merchant" set forth in Section 1 of the Bill of Lading, either as " . . . the shipper, holder of the Sea Waybill, consignee,. . . and the receiver of the Goods." As such, and as more particularly described in Section 14 of the Bill of Lading, all of the Defendants agreed to pay all freight, loading and other charges incident to the transportation of Defendants' goods to their ultimate destination(s).

9. Plaintiff's Bill of Lading served as Defendants' document(s) of title, receipt(s) of the goods transported by Plaintiff, and contract(s) of carriage between Plaintiff and Defendants. As such, Plaintiff's Bill of Lading formed the basis for Defendants securing the goods from its supplier(s) at the point(s) of shipment to the point(s) of destination.

10. Defendants' goods were transported to Defendants at the port(s) of destination and defendant(s) received its goods.

11. Plaintiff has duly performed all duties and obligations required to be performed by plaintiff.

12. Defendants wrongfully, willfully, negligently and/or fraudulently breached the terms of the subject agreements by, inter alia, failing to pay the costs of carriage of the ocean freight and/or per diem charges for freight, detention, demurrage, and/or other associated costs accrued on the cargoes, all as duly invoiced by Plaintiff to Defendants.

13. As a result of Defendants' breach of the agreements, Plaintiff has incurred, and will continue to incur, costs and expenses for which Defendant(s) is(are) liable under the terms of the governing contracts and at law.

14. Plaintiff has placed Defendants on notice of their claim that Defendant(s) has(have) breached the subject agreements and violated plaintiff's rights under the law.

15. Plaintiff, having reviewed its books and records in the ordinary course of business have found no payment(s), credit(s) or set-off(s) as against the amounts due set forth herein. Despite plaintiff's repeated demands, Defendant(s) has(have) failed to pay the Plaintiff's damages due and owing under the agreements and at law.

16. By reason of the foregoing, Plaintiff has sustained damages in the amount of $31,210.00, together with interest, costs, fees, including reasonable attorneys' fees and expenses, for which Plaintiff is entitled pursuant to the terms and conditions of the Bill(s) of Lading and its invoice, a true and correct copy of which is attached hereto as Exhibit 2.

### As and for a Second Cause of Action

17. Plaintiff repeats and reiterates each and every allegation contained in the preceding paragraphs, as if specifically set forth herein at length.

18. Defendants have an account stated with the Plaintiff, and said invoice(s), bill(s), and account statement(s) as to the amount(s) due, have been sent to the Defendants, to no avail.

19. By reason of the foregoing, Plaintiff has sustained damages in the amount of $31,210.00, together with interest, costs, fees, including reasonable attorneys' fees, and expenses.

### As and for a Third Cause of Action

20. Plaintiff repeats and reiterates each and every allegation contained in the preceding paragraphs, as if specifically set forth herein at length.

21. Plaintiff has conferred a benefit upon the Defendants for which the Defendants have failed to pay therefor, resulting in a severe economic detriment to the Plaintiff. Should the Court find Plaintiff has no adequate remedy at law, Plaintiff is due from Defendant(s) the *quantum meruit* value of Plaintiff's services which is the sum of $31,210.00.

### As and for a Fourth Cause of Action

22. Plaintiff repeats and reiterates each and every allegation contained in the preceding paragraphs, as if specifically set forth herein at length.

23. There is due from the Defendant(s), the sum of $31,210.00, on a certain book account, and, defendant(s) have been made aware of the past due account(s) on said book account, to no avail.

24. Payment of the aforesaid sum has been demanded and refused.

### As and for a Fifth Cause of Action

25. Plaintiff repeats and reiterates each and every allegation contained in the preceding paragraphs, as if specifically set forth herein at length.

4

26. Plaintiff sues the Defendant(s) for services rendered by the Plaintiff to Defendant(s), upon the promise by the Defendant(s) to pay the agreed amounts.

27. Payment has been demanded by the Plaintiff but the Defendant(s) has (have) failed and refused to make payment.

**WHEREFORE,** Plaintiff respectfully requests the Court enter judgment against Defendant as follow:

    A. For the sum of $31,210.00 plus interest at the highest statutory rate allowed by law per annum from dates to be proven at trial, but at least from July 27, 2022, at the legal post-judgment rate;

    B. For Plaintiff costs and disbursement incurred herein;

    C. For Plaintiff's reasonable attorneys' fees; and

    D. For such other and further relief as the court deems just and equitable in the circumstances.

DATED this __14th____ of June, 2024.

PARKER LAW FIRM, P.L.C.

By:___/s/ John D. Parker, II_____
John D. Parker, II
11801 North Tatum Boulevard, Suite 229
Phoenix, Arizona 85028
*Attorneys for Plaintiff*

K:\2000\240073\District Court Complaint FINAL.wpd

# Exhibit One

| | |
|---|---|
| Carrier: Hapag-Lloyd Aktiengesellschaft, Hamburg | **Sea Waybill** — Multimodal Transport or Port to Port Shipment |

**Hapag-Lloyd**

**Shipper:**
EZZ LOJISTIK LIMITED SIRKETI
ISKENDERPASA MAH.ATATURK
MEY.NO:23/14 ORTAHISAR-TRABZON
+90 0462 321 7070

VAT-ID-No: DE813960018
Ballindamm 25 · D-20095 Hamburg

**Carrier's Reference:** 77827254
**SWB-No.:** HLCUIZ12201AVFW8
**Page:** 2 / 3
**Export References:**

**Consignee:**
ASTAR BARBER SHOP LLC
DANIEL YOUNAN/ ASTAR BARBER SHOP
LLC 3610 W JORDON IN, PHOENIZ AZ
85086,USA
TEL:+16025414149 TAX:850644309

**Forwarding Agent:**

**Notify Address (Carrier not responsible for failure to notify):**
ASTAR BARBER SHOP LLC
DANIEL YOUNAN/ ASTAR BARBER SHOP
LLC 3610 W JORDON IN, PHOENIZ AZ
85086,USA
TEL:+16025414149 TAX:850644309

**Consignee's Reference:**

**Place of Receipt:**
IKITELLI OSB ISDOK SANAYI SITESI A
BASAKSEHIR
TURKEY

**Vessel(s):** MINSTREL   **Voyage-No.:** 001W
**Place of Delivery:**

**Port of Loading:** ISTANBUL
**Port of Discharge:** HOUSTON, TX

Sea Waybill · Not Negotiable

| Container Nos., Seal Nos.; Marks and Nos. | Number and Kind of Packages, Description of Goods | Gross Weight: | Measurement: |
|---|---|---|---|
| | AS PER ATTACHED LIST | | |
| | ================= | ============ | |
| | 22 PALLET, BOX | 2176.000 KGM | |
| | | 2122.000 NET KGM | |

SHIPPED ON BOARD, DATE : 19-FEB-2022
PORT OF LOADING: ISTANBUL
VESSEL NAME: MINSTREL VOYAGE: 001W

ORIGIN HAULAGE CHARGES PREPAID
PORT CHARGE ORIGIN COLLECT
SEAFREIGHT + ADDITIONALS PREPAID
PORT CHARGE DESTINATION PREPAID

**Shipper's declared Value [see clause 7(2) and 7(3)]**

| Total No. of Containers received by the Carrier: | Packages received by the Carrier: |
|---|---|
| 1 | |

| Movement: | Currency: |
|---|---|
| FCL/FCL | |

| Charge | Rate | Basis | aWt/Vol/Val | P/C | Amount |
|---|---|---|---|---|---|

Above Particulars as declared by Shipper. Without responsibility or warranty as to correctness by Carrier [see clause 11]

RECEIVED by the Carrier from the Shipper in apparent good order and condition (unless otherwise noted herein) the total number or quantity of Containers or other packages or units indicated in the box opposite entitled "Total No. of Containers/ Packages received by the Carrier" for Carriage subject to all the terms and conditions hereof (INCLUDING THE TERMS AND CONDITIONS ON THE REVERSE HEREOF AND THE TERMS AND CONDITIONS OF THE CARRIER'S APPLICABLE TARIFF) from the Place of Receipt or the Port of Loading, whichever is applicable, to the Port of Discharge or the Place of Delivery, whichever is applicable. In accepting this Sea Waybill the Merchant expressly accepts and agrees to all its terms and conditions whether printed, stamped or written, or otherwise incorporated, notwithstanding the non-signing of this Sea Waybill by the Merchant.

**Place and date of issue:** IZMIR   19-FEB-2022
**Freight payable at:** ELSEWHERE

**FOR ABOVE NAMED CARRIER**
**HAPAG-LLOYD OVERSEAS TRANSPORT SA**
**AS AGENTS**

| Total Freight Prepaid | Total Freight Collect | Total Freight |
|---|---|---|

# Sea Waybill · Terms and Conditions
Annex 1 to the Sea Waybill Transmission Agreement

## 1. Definitions
"Carrier" means the party named on page 2 of this Sea Waybill.
"Carriage" means the whole or any part of the operations and services undertaken by the Carrier in respect of the Goods covered by this Sea Waybill.
"Crew" means the vessel's master, her officers, seamen and other persons directly or indirectly employed in the operation of the vessel as defined in section 478 of the German Commercial Code.
"Hague Rules" means the provisions of the International Convention for the Unification of Certain Rules relating to Bills of Lading signed at Brussels on 25th August, 1924 without the amendments by the Protocol signed at Brussels on 23rd February, 1968.
"Hague-Visby Rules" means the provisions of the International Convention for the Unification of Certain Rules relating to Bills of Lading signed at Brussels on 25th August, 1924 and includes the amendments by the Protocol signed at Brussels on 23rd February, 1968.
"US COGSA" means the US Carriage of Goods by Sea Act 1936.
"Merchant" includes the shipper, holder of the Sea Waybill, consignee, the person to whom the data have been forwarded as provided for in clause 2 (2) and the receiver of the Goods.
"Servants or Agents" includes the master, officers and Crew of the vessel, owners, managers and operators of vessels (other than the Carrier), underlying carriers, sub-contractors, stevedores, terminal and groupage operators, road and rail transport operators and any independent contractors employed by the Carrier in the performance of the Carriage.
"Goods" means the whole or any part of the cargo received from the shipper and includes any equipment or Container not supplied by or on behalf of the Carrier.
"Container" includes any container, trailer, transportable tank, flat, or any similar article used to consolidate goods and any equipment thereof or connected thereto.
"Freight" includes all charges payable to the Carrier in accordance with the applicable Tariff and this Sea Waybill.

## 2. General Conditions
(1) This Sea Waybill is issued for a contract of Carriage which is not covered by a Bill of Lading or similar document or title.
(2) A signed Sea Waybill is returned to the shipper and a copy of it is applied as an input source document to a computerized system for data transmission of particulars as described on page 2 hereof to the country of destination. Upon receipt of the data so transmitted, the Carrier or his agent in the country of destination will forward such data to the consignee and notify party.
(3) The Carrier shall not be liable for any loss or damage or delay to or in connection with the Goods or any consequential or indirect damage to the Merchant arising unintentionally from erroneous input into the computer system or from wrongful data transmission.
(4) This contract of Carriage shall be subject to German law which would have been compulsorily applicable if a Bill of Lading rather than a Sea Waybill had been issued.
(5) The terms and conditions of the Carrier's applicable Tariff are incorporated herein, with particular attention drawn to the terms and conditions relating to Containers and vehicle demurrage and detention. The provisions relevant to the applicable Tariff can be acquired from the Carrier or his Agents upon request. The Carrier's standard Tariff can be accessed online at www.hapag-lloyd.com. In the case of any inconsistency between this Sea Waybill and the applicable Tariff, this Sea Waybill shall prevail, except in cases relating to Freight.

## 3. Right of Control, Delivery of Goods
(1) The shipper shall be the only party entitled to give the Carrier instructions in relation to the contract of Carriage. He shall be entitled to change the name of the consignee at any time up to the consignee claiming delivery of the Goods after their arrival at destination, provided he gives the Carrier unambiguous notice in writing, or by some other means acceptable to the Carrier, and thereby undertaking to indemnify the Carrier against any additional expense caused thereby
(2) (a) The Goods mentioned on page 2 will be delivered after payment of Freight and other charges to the consignee, or to such person, who identifies himself as being a representative of the consignee, and such delivery shall constitute due performance of this contract.
(b) The Carrier shall be under no liability for wrong delivery if he can prove that he has exercised reasonable care to ascertain that the party claiming delivery is in fact entitled.

## 4. Sub-Contracting and Indemnity
(1) The Carrier shall be entitled to sub-contract on any terms whatsoever the whole or any part of the Carriage.
(2) The Merchant hereby agrees that no Servants or Agents are, or shall be deemed to be liable with respect to the Goods or the Carriage as Carrier, bailee or otherwise. If, however, it shall be adjudged that any Servants or Agents are a carrier or bailee of the Goods or under any responsibility with respect thereto, all exemptions and limitations of and exoneration from liability provided by law or by the Terms and Conditions including the jurisdiction clause shall be available to such Servant or Agent. If any claim is made against any of the Servants or Agents, the Merchant shall indemnify the Carrier against all consequences thereof.
(3) The provisions of Clause 4 (2) shall extend to claims of whatsoever nature against other persons performing space on the carrying vessel.

## 5. Carrier's Responsibility
(1) Port-to-Port Shipment
(a) When loss or damage has occurred between the time of loading of the Goods by the Carrier at the port of loading and the time of discharge by the Carrier at the port of discharge, the responsibility of the Carrier shall be determined in accordance with German law making the Hague Rules compulsorily applicable. In the event the Sea Waybill has been issued in Germany or a country in which the Hague Rules are compulsorily applicable to a Bill of Lading and this Sea Waybill covers a shipment from or to Germany and such aforesaid country or between such aforesaid countries, the responsibility of the Carrier shall be determined in accordance with German law, making the Hague Rules compulsorily applicable.
(b) The Carrier shall not be responsible for any fault of his personnel and of the vessel's Crew in cases of damage or loss caused by fire or explosion on board the vessel or caused by the navigation or management of the vessel, in the latter case save for damage or loss caused when executing measures which were predominantly taken in the interest of the Goods ("Error in Navigation and Fire Defenses").
(c) The Carrier shall not be responsible for any fault of other persons involved in the navigation or management of the vessel, in particular pilots on board of the vessel or the Crew of a tug boat assisting the vessel, in cases of damage or loss caused by the navigation or the management of the vessel, save for damage or loss caused when executing measures which were predominantly taken in the interest of the Goods.
(d) Prior to loading and after discharge the Carrier is not deemed to have custody of the Goods. The Carrier is not responsible for acts or omissions of a terminal operator to which the Goods were submitted either by the Carrier or the Merchant. In the event that the Bill of Lading covers a shipment to or from the USA, however, US COGSA shall be applicable before the Goods are loaded on or after they are discharged from the vessel.
(e) Unless notice of loss or damage be given in writing to the Carrier or his agent at the port of discharge before or at the time of the removal of the Goods into the custody of the person entitled to delivery thereof under the contract of Carriage, or, if the loss or damage is not apparent, within three (3) days, such removal shall be prima facie evidence of the delivery by the Carrier as described in this Sea Waybill and any such loss or damage which may have occurred to the Goods shall be deemed to be due to circumstances which are not the responsibility of the Carrier. The notice must clearly specify the damage. Notwithstanding the aforesaid, if a Container has been delivered to the Merchant, the Merchant must prove that the damage to or loss of the Goods did not occur during the period after delivery, when the Container was in the custody of the Merchant.
(f) Compensation shall be calculated by reference to the value of the Goods at the place and the time they are delivered to the Merchant, or at the place and the time they should have been delivered. For the purpose of determining the extent of the Carrier's liability for loss of or damage to the Goods, the sound value of the Goods is agreed to be the invoice value plus Freight and insurance if paid.
(g) In the event that this Sea Waybill covers a shipment from or to the USA US COGSA shall apply. US COGSA shall also be applicable before the Goods are loaded on or after they are discharged from the vessel in the USA.
(2) Multimodal Transport
(a) If the place of damage to or loss of the Goods is known, the responsibility of the Carrier's is determined by the law which applies to this leg of Carriage.
(b) If it is established that loss or damage occurred during the port-to-port leg the "Error in Navigation and Fire Defenses" as per Clause 5 (1) (b) apply.
(c) If it is established that loss or damage occurred during the port-to-port leg for reasons stipulated in Clause 5 (1) (c) above, Clause 5 (1) (c) applies.
(d) In the event that part of the multimodal transport is a shipment to or from the USA and the damage to or loss of the Goods occurs at the time between the loading at the port of loading and the discharging at the port of discharge, US COGSA shall apply. US COGSA also applies before the Goods are loaded on or after they are discharged from the vessel in the USA.
(e) With respect to road Carriage between countries in Europe liability shall be determined in accordance with the Convention on the Contract for the International Carriage of Goods by Road (CMR), dated May 19, 1956; and during rail Carriage between countries in Europe according to the International Agreement on Railway Transports (CIM), dated February 25, 1961 [or any amendments to this Convention or Agreement].
(f) Unless notice of loss or damage be given in writing to the Carrier or his agent at the port of discharge before or at the time of the removal of the Goods into the custody of the person entitled to delivery thereof under the contract of Carriage, or, if the loss or damage is not apparent within seven (7) days, such removal shall be prima facie evidence of the delivery by the Carrier as described in this Sea Waybill. The notice must clearly specify the damage. Notwithstanding the aforesaid, if a Container has been delivered to the Merchant, the Merchant must prove that the damage to or loss of the Goods did not occur during the period after delivery, when the Container was in the custody of the Merchant.
(g) Compensation shall be calculated by reference to the value of the Goods at the time they were delivered to the Carrier for Carriage.
(h) IN THE EVENT THAT THE LAW WHICH IS APPLICABLE UNDER CLAUSE 5 (2) (a) IS NOT MANDATORY AND PROVIDES FOR LIABILITY EXCEEDING 2 SDRs PER KILO, THE MAXIMUM LIABILITY SHALL BE 2 SDRs PER KILO OF THE GROSS WEIGHT OF THE GOODS LOST OR DAMAGED. SDRs MEANS SPECIAL DRAWING RIGHTS AS DEFINED BY THE INTERNATIONAL MONETARY FUND.
(i) IF THE STAGE OF THE CARRIAGE DURING WHICH LOSS OR DAMAGE OCCURRED IS NOT KNOWN, THE CARRIER'S MAXIMUM LIABILITY SHALL IN NO EVENT WHATSOEVER AND HOWSOEVER ARISING EXCEED 2 SDRs PER KILO OF GROSS WEIGHT OF THE GOODS LOST OR DAMAGED.
(j) THE CARRIER SHALL NOT BE ENTITLED TO THE BENEFIT OF THE LIMITATION OF LIABILITY PROVIDED FOR IN CLAUSE 5 (2) (h) AND (i) IF IT IS PROVED THAT THE DAMAGE RESULTED FROM AN ACT OR OMISSION OF THE CARRIER OR HIS SERVANTS OR AGENTS DONE WITH INTENT TO CAUSE DAMAGE, OR RECKLESSLY AND WITH KNOWLEDGE THAT DAMAGE WOULD PROBABLY RESULT. HOWEVER, IF THE LOSS OR DAMAGE HAS OCCURRED DURING THE CARRIAGE OF GOODS BY SEA, THE CARRIER IS ENTITLED TO THE BENEFIT OF LIMITATION OF LIABILITY AS PROVIDED FOR IN CLAUSE 5 (2) (i) EXCEPT WHERE IT IS PROVED THAT THE DAMAGE RESULTED FROM AN ACT OR OMISSION OF THE CARRIER WITH INTENT TO CAUSE DAMAGE, OR RECKLESSLY AND WITH KNOWLEDGE THAT DAMAGE WOULD PROBABLY RESULT.
(k) Subject to the applicable restrictions in statutory law and international conventions, the Carrier shall not be liable for damage caused by error in navigating or handling the vessel, including errors caused by the arrangement of group of tugs or pushers.
(3) Change of Destination by Merchant
In the event that the Merchant requests the Carrier to deliver the Goods at a port or place other than the port of discharge or the place of delivery originally designated in this Sea Waybill and the Carrier in its absolute discretion agrees to such request, such further Carriage will be undertaken on the basis that the Sea Waybill terms and conditions are to apply to such Carriage as if the ultimate destination agreed with the Merchant had been entered on page 2 of this Sea Waybill as the port of discharge or place of delivery.

## 6. Time for Suit
In any event, the Carrier shall be discharged from all liability in respect of loss or damage to the Goods, non-delivery, mis-delivery, delay or any other loss or damage connected or related to the Carriage unless suit is brought within one (1) year after delivery of the Goods or the date when the Goods should have been delivered.

## 7. Sundry Liability Provisions
(1) Hague Rules/Hague-Visby Rules
In the event that suit is brought in a court other than the court as provided for in Clause 24 and such court contrary to Clause 24 accepts jurisdiction, then the Hague-Visby Rules are compulsorily applicable, if this Sea Waybill has been issued in a country where the Hague-Visby Rules are compulsorily applicable and the Carrier's liability shall not exceed 2 SDRs per kilo of gross weight of the Goods lost or damaged; if this Sea Waybill has been issued in a country in which the Hague Rules apply to a Bill of Lading, the Carrier's liability shall not exceed GBP 100 per package or unit.
(2) US COGSA
Notwithstanding any of the foregoing to the contrary, in the event that suit is brought in a court in the USA and such court, contrary to Clause 24, accepts jurisdiction, then US COGSA shall be compulsorily applicable to this contract of Carriage if this Sea Waybill covers a shipment to or from the USA. The provisions set forth in US COGSA shall also govern before the Goods are loaded on and after they are discharged from the vessel. The Carrier's maximum liability in respect to the Goods shall not exceed USD 500 per package or, where the Goods are not shipped in packages, USD 500 per customary freight unit unless the nature and value of the Goods has been declared by the Merchant and inserted in page 2 of the Sea Waybill and said Merchant shall have paid the applicable ad valorem freight rate set forth in Carrier's Tariff.
(3) Shipper's declared value
The Merchant agrees and acknowledges that the Carrier has no knowledge of the value of the Goods and that compensation higher than that provided for herein may not be claimed unless the nature and value of such Goods have been declared by the Merchant, agreed to by the Carrier and inserted into the Sea Waybill before shipment. In addition the applicable ad valorem freight rate as set out in the Carrier's Tariff must be paid. Any partial loss or damage shall be adjusted pro rata on the basis of such declared value. If the declared value is higher than the actual value, the Carrier shall in no event be liable to pay compensation higher than the net invoice value of the Goods plus Freight and insurance if paid. Any references to letters of credit, import licenses, sales contracts, invoices or order number and/ or details of any contract to which the Carrier is not a party when shown on page 2 of this Sea Waybill shall not be regarded as a declaration of value.
(4) Limitation of Liability
It is hereby agreed by the Merchant that the Carrier qualifies as a person entitled to limit liability under any Convention or Act pertaining to limitation of liability on maritime claims, whichever is applicable. The Carrier may be the ship-owner, charterer (including a slot-charterer), manager or operator of the vessel, or salvor rendering services in connection with salvage operations. If any claims are made against the Servants or Agents, they are entitled to avail themselves of the same limitation available to the Carrier.
(5) Delay
(a) Unless expressly agreed, the Carrier does not undertake that the Goods shall arrive at the port of discharge or place of delivery at any particular time or to meet any particular market or use, and the Carrier shall not be liable for any loss or damage caused by delay.
(b) If notwithstanding the foregoing the Carrier is held responsible for the consequences of any delay, the Carrier's liability is limited to an amount equal to three times of the Freight unless any lower limitation applies. The limitation does not apply if it is proved that the delay in delivery resulted from an act or omission of the Carrier or of his Servants or Agents done with the intent to cause damage, or recklessly and with knowledge that damage would probably result.
(6) Scope of Application and Exclusions
(a) The rights, defenses, limitations and liberties of whatsoever nature provided for in this Sea Waybill shall apply in any action against the Carrier for loss or damage or delay, howsoever occurring and whether the action be founded in contract or in tort.
(b) Save as otherwise provided herein, the Carrier shall in no circumstances whatsoever and howsoever arising be liable for direct or indirect or consequential loss or damage or loss of profits, unless it is established the Carrier himself acted with the intent to cause damage, or recklessly and with knowledge that damage would probably result. The Merchant shall indemnify the Carrier against any customs liabilities even if caused by loss of the Goods.

## 8. Shipper-Packed Containers
If a Container has not been packed by or on behalf of the Carrier:
(1) the Carrier shall not be liable for loss of or damage to the Goods caused by:
(a) the manner in which the Container has been packed; or
(b) the unsuitability of the Goods for Carriage in the Container supplied or
(c) the unsuitability or defective condition of the Container or the incorrect setting of any refrigeration controls thereof, provided that, if the Container has been supplied by or on behalf of the Carrier, this unsuitability or defective condition would have been apparent upon inspection by the Merchant at or prior to the time when the Container was packed; or
(d) packing refrigerated Goods that are not at the correct temperature for Carriage.
(2) the Merchant shall indemnify the Carrier against any loss, damage, liability or expense whatsoever and howsoever arising, caused by one or more matters referred to in Clause 8 (1).
(3) with regard to refrigerated Goods, the Carrier shall be deemed to have fulfilled his obligations under the contract of Carriage and shall have no liability whatsoever if such refrigerated Goods are carried in a range of plus or minus 2,5 degrees celsius in regard to any temperature indicated on page 2 of this Sea Waybill. The term "apparent good order and condition" when used in this Sea Waybill with reference to the Goods which require refrigeration does not mean that the Goods when received were verified by the Carrier as being at the temperature on page 2 of this Sea Waybill. Where a temperature is indicated the Carrier undertakes that the Container is equipped to maintain the temperature set by the Merchant. The Merchant remains responsible for the consequences of any temperature irregularities prior to receipt or after delivery by the Carrier.
(4) Container with Goods packed by the Merchant shall be delivered to the Carrier with an intact high security seal in place, and the seal number noted in writing on this Sea Waybill by the Merchant. In the event the Container is not so sealed, the Carrier reserves the right, at Merchant's expense, to return the Container to the Merchant for resealing, or to affix a seal.

## 9. Inspection of Goods
The Carrier or any person to whom the Carrier has sub-contracted the Carriage or any person authorized by the Carrier shall be entitled, but under no obligation, to open any Container or package at any time and to inspect the Goods. If, by order of the authorities at any place, a Container has to be opened for the purpose to be inspected, the Carrier will not be liable for any loss or damage incurred as a result of such opening, unpacking, inspection or repacking. The Carrier shall be entitled to recover the costs of such opening, unpacking, inspection and repacking from the Merchant.

## 10. Carriage Affected by Condition of Goods
If it appears at any time that, due to their condition, the Goods cannot safely or properly be carried further or without incurring additional expense or taking any measure(s) in relation to the Container or the Goods, the Carrier may without notice to the Merchant take any measure(s) and/or incur any additional expense to carry or to continue the Carriage, and/or sell or dispose of the Goods, and/or abandon the Carriage and/or store them ashore or afloat, under cover or in the open, at any place, which ever the Carrier, in his absolute discretion, considers most appropriate, which abandonment, storage, sale or disposal shall be deemed to constitute due delivery under this Sea Waybill. The Merchant shall indemnify the Carrier against any additional expense so incurred.

## 11. Description of the Goods
The Shipper warrants to the Carrier that the particulars relating to the Goods as set out on page 2 have been checked by the shipper on receipt of this Sea Waybill and that such particulars, and any other particulars furnished by or on behalf of the shipper, are adequate and correct. The shipper also warrants that the Goods are lawful Goods and contain no contraband.

## 12. Merchant's Responsibility
(1) All persons coming within the definition of Merchant in Clause 1 shall be jointly and severally liable to the Carrier for the fulfillment of all obligations and warranties undertaken by the Merchant either in this Sea Waybill, or required by law. The Merchant shall indemnify the Carrier against all loss, damage, expenses and fines, arising or resulting from any breach of these obligations and warranties.
(2) The Merchant shall comply with all regulations or requirements of customs, ports and/or other authorities and shall bear and pay all duties, taxes, fines, imposts, expenses or losses (including freight for any additional Carriage) incurred or suffered by reason of any failure to so comply, or by reason of any illegal, incorrect, or insufficient marking, number or addressing of the Goods or the discovery of any drugs, narcotics, stowaways or other illegal substances within Containers packed by the Merchant or inside Goods supplied by the Merchant, or stamp duty imposed by any country, and shall indemnify the Carrier in respect thereof.
(3) If Containers supplied by or on behalf of the Carrier are unpacked at the Merchant's premises, the Merchant is responsible for returning the empty Containers (free of any dangerous goods placards, labels or markings), with interiors brushed and clean, to the point or place designated by the Carrier, his Servants or Agents, within the time prescribed. Should a Container not be returned within the time prescribed in the Tariff, the Merchant shall be liable for any detention, loss or expenses which may arise from such non-return.

## 13. ISPS Code
(1) The Merchant must comply with the requirements of the ISPS Code. If the Carrier is held liable by any State Authority or any other third party for the violation of the ISPS Code by the Merchant, the Merchant will indemnify and hold the Carrier harmless from any damages resulting from the violation of the ISPS Code by the Merchant.
(2) The Merchant undertakes to pay the Carrier any costs or expenses whatsoever arising out of or related to security regulations or measures required by the port facility or any relevant authority in accordance with the ISPS Code in relation to the Merchant's Goods.
(3) The Carrier is entitled to deviate the vessel to a different port and to unload the Goods there if the authorities in the port of discharge have increased its level of security according to the ISPS Code after the Goods have been loaded.
(4) The Merchant undertakes to compensate any costs and expenses suffered by the Carrier because of a delay of the vessel resulting from a violation of the ISPS Code by the Merchant.

## 14. Freight
(1) Freight shall be deemed fully earned on receipt of the Goods by the Carrier and shall be paid and nonreturnable in any event.
(2) Freight has been calculated and must be paid on the basis of particulars furnished by or on behalf of the shipper. If the particulars furnished by or on behalf of the shipper are incorrect, liquidated damages must be paid to the Carrier, in accordance with the applicable Tariff.
(3) All Freight shall be paid without any set-off or counterclaim unless the claim is not in dispute or confirmed by final court decision.
(4) If the Merchant fails to pay the Freight when due, he shall be liable for all costs, liquidated damages in accordance with the applicable Tariff and in particular interest which accrues until payment.

## 15. Lien
The Carrier shall have a lien on the Goods and any documents relating thereto for all sums payable by the Merchant to the Carrier under this or any other contract and for general average contributions, to whomsoever due. The Carrier may exercise his lien at any time and in any place at his sole discretion, whether the contractual Carriage is completed or not. The Carrier's lien shall extend to cover the cost of recovering any sums due. The Carrier shall have the right to sell the Goods at public or private sale without notice to the Merchant. If the proceeds of this sale fail to cover the whole amount due, the Carrier is entitled to recover the deficit from the Merchant.

## 16. Optional Stowage and Deck Cargo
(1) The Goods may be packed by the Carrier in Containers and consolidated with other goods in Containers.
(2) Goods, whether or not packed in Containers, may be carried on deck or under deck without notice to the Merchant. All such Goods whether carried on deck or under deck, shall participate in general average.

## 17. Methods and Routes of Carriage
(1) The Carrier may at any time and without notice to the Merchant:
(a) use any means of Carriage or storage whatsoever, including the utilization of railway, road vehicle or inland river services
(b) transfer the Goods from one conveyance to another, including but not limited to transshipping or carrying on another vessel or conveyance or by any other means of transport than that named on page 2
(c) unpack and remove Goods which have been packed into a Container and forward them in a Container or otherwise
(d) proceed by any route in his discretion (whether or not the nearest or most direct or customary or advertised route), at any speed, and proceed to or stay at any place or port whatsoever, once or more often and in any order
(e) load or unload the Goods at any place or port (whether or not such port is named on page 2 as the Port of Loading or Port of Discharge) and store the Goods temporarily at any place or port whatsoever, once or more often.
(f) comply with any orders or recommendations given by any government or authority.
(2) The liberties set out in this Clause 17 may be invoked by the Carrier for any purpose whatsoever, whether or not connected with the Carriage of the Goods, including loading or unloading other Goods, bunkering, undergoing repairs, adjusting instruments, picking up or landing any persons. Anything done in accordance with Clause 17 (1) or any delay arising therefrom shall be deemed to be within the contractual Carriage and shall not be a deviation.

## 18. Matters Affecting Performance
If at any time the Carriage is or is likely to be affected by any hindrance, risk, danger, delay, difficulty or disadvantage of any kind including but not limited to war, civil commotion, political unrest, piracy, act of terrorism and threat thereof and howsoever arising (even though the circumstances giving rise to such hindrance, risk, danger, delay, difficulty or disadvantage existed at the time this contract was entered into or when the Goods were received for the Carriage), then the Carrier (whether or not the Carriage is commenced) may, at its sole discretion and without prior notice to the Merchant, either:
(1) carry the Goods to the contracted port of discharge or place of delivery, whichever is applicable, by an alternative route to that indicated on page 2 of this Sea Waybill or that which is usual for Goods consigned to that port of discharge or place of delivery and he shall be entitled to charge such additional Freight; or
(2) suspend the Carriage of the Goods and store them ashore or afloat and endeavor to forward them as soon as reasonably possible and he shall be entitled to charge such storage costs and additional Freight; or
(3) abandon the Carriage of the Goods and place them at the Merchant's disposal at any place or port which the Carrier may deem safe and convenient, whereupon the responsibility of the Carrier in respect of such Goods shall cease. The Merchant shall pay any additional costs of the Carriage to, and delivery and storage at, such place or port.

## 19. Dangerous Goods
(1) No Goods which are or may become dangerous, inflammable or damaging (including radioactive materials), shall be tendered to the Carrier for Carriage without his express consent in writing, and without the Container as well as the Goods themselves being distinctly marked on the outside so as to indicate the nature and character of any such Goods and so as to comply with any applicable laws, regulations or requirements. If any such Goods are delivered to the Carrier without such written consent and/or marking, or if in the opinion of the Carrier the Goods are or are likely to become of a dangerous, inflammable or damaging nature, they may at any time be destroyed, disposed of, abandoned, or rendered harmless without compensation to the Merchant.
(2) The Merchant warrants that the Goods are sufficiently packed in compliance with all laws or regulations and requirements with regard to the nature of the Goods.
(3) Whether or not the Merchant was aware of the nature of the Goods, the Merchant shall indemnify the Carrier against all claims, losses, damages or expenses arising in consequence of the Carriage of such Goods.
(4) Nothing contained in this Clause shall deprive the Carrier of any of his rights provided for elsewhere.

## 20. Notification and Delivery
(1) Any failure to give notification of the arrival of the Goods shall not involve the Carrier in any liability nor relieve the Merchant of any obligation hereunder.
(2) The Merchant shall take delivery of the Goods within the time provided for in the Carrier's applicable Tariff. If the Merchant fails to do so the Carrier shall be entitled, without notice, to unpack the Goods if packed in Containers and/or to store the Goods ashore, afloat, in the open or under cover, at the sole risk of the Merchant. Such storage shall constitute due delivery hereunder, and thereupon the liability of the Carrier in respect of the Goods stored as aforesaid shall wholly cease, and the Merchant shall be responsible for the costs of such storage, as well as detention and demurrage.
(3) If the Merchant fails to take delivery of the Goods within thirty days of delivery becoming due under Clause 20 (2), or if in the opinion the Carrier they are likely to deteriorate, decay, become worthless or incur charges whether for storage or otherwise in excess of their value, the Carrier may, without prejudice to any other rights which he may have against the Merchant, without notice sell, destroy or dispose of the Goods and apply any proceeds of sale in reduction of the sums due to the Carrier from the Merchant.
(4) Without prejudice to an earlier termination by virtue of law or any other clause of this Sea Waybill the responsibility of the Carrier shall cease and the Goods shall be considered to be delivered at their own risk and expense in every respect when taken into the custody of the customs or other authorities.

## 21. General Average & Salvage
General average to be adjusted in any currency at any place selected by the Carrier and according to the York/Antwerp Rules 1974 as amended in 1990 and 1994. Any claims and/or disputes relating to general average shall be exclusively subject to the Laws and Jurisdictions set out in Clause 24.

## 22. Both-to-Blame Collision
The Both-to-Blame Collision clause published by the Baltic and International Maritime Council and obtainable from the Carrier or his agents upon request is hereby incorporated into this Sea Waybill.

## 23. Validity
In the event that anything herein contained is inconsistent with any applicable International Convention or national law which cannot be departed from by private contract, the provisions hereof shall to the extent of such inconsistency but not further be null and void. Unless otherwise specifically agreed in writing between the Merchant and the Carrier, the terms and conditions of this Sea Waybill supersede any prior agreements between Merchant and Carrier.

## 24. Law and Jurisdiction
Except as otherwise provided specifically herein any claim or dispute arising under this Sea Waybill shall be governed by the law of the Federal Republic of Germany and determined in the Hamburg courts to the exclusion of the jurisdiction of the courts of any other place. In case the Carrier intends to sue the Merchant the Carrier has also the option to file a suit at the Merchant's place of business. In the event this clause is inapplicable under local law then jurisdiction and choice of law shall lie in either the port of loading or port of discharge at Carrier's option.

Sea Waybill · Not Negotiable     Sea Waybill · Not Negotiable

90147346 L.V. 03/13 Printed 03/13

Hapag-Lloyd Aktiengesellschaft, Hamburg

 Hapag-Lloyd

Page 3 / 3

SWB-No. HLCUIZ12201AVFW8

```
------------------------------------------------------------------------
Cont/Seals/Marks   Packages/Description of Goods         Weight   Measure

                   1 CONT. 40'X8'6" GENERAL PURPOSE CONT. SLAC*
UACU  8376460      22 PALLET, BOX                        2176.000
SEALS :            ONION CHOPPING ROBOT                       KGM
HLB9922748         4 MOTORIZED DONER FURNACE             2122.000
9818577            3 MOTORIZED DONER FURNACE             NET KGM
                   HT892 BARBERS BENCH
                   HB335 WAITING CHAIR
                   HS763 STAND
                   HA545 COFFEE TABLE
                   HA546 COFFEE TABLE
                   HB728 COUNTER
                   HM128 STOOL
                   HC137 BARBER CHAIR
```

*SLAC = Shipper's Load, Stow, Weight and Count

SHIPPER'S TAX ID NUMBER : KARADENIZ 3840728463

# Exhibit Two

Hapag-Lloyd (America) LLC.
5515 Spalding Drive
Peachtree Corners, GA 30092

 Hapag-Lloyd

---

Hapag-Lloyd (America) LLC. - 5515 Spalding Drive - Peachtree Corners, GA 30092, USA

```
ASTAR BARBER SHOP LLC                    ISSUING AGENT:
DANIEL YOUNAN/ ASTAR BARBER SHOP         HAPAG-LLOYD (AMERICA) LLC
LLC 3610 W JORDON IN, PHOENIZ AZ         PEACHTREE CORNERS, GA 30092
HOUSTON, TX 85086                        USA
USA
```

```
                                                          PAGE   1 / 3
I N V O I C E  NO.:              2121301594              JULY 26, 2022

CUSTOMER   : 54176871

SHIPMENT        77827254 FCL/FCL
SEASPAN SAIGON            08W09/285288        SAILING MAR. 13, 2022
                                              ARRIVAL APR. 3, 2022

FROM   BASAKSEHIR         VIA   ISTANBUL       TO   HOUSTON, TX

01 CONT. 40' X 8'6" GENERAL PURPOSE CONT.
UACU  8376460

FREETIME                                  5.000 DAY
     FROM 2022-04-05 00:00      TO 2022-04-11 24:00
DEMURRAGE DEST                250.00 USD     5.000 DAY       1250.00 USD
     FROM 2022-04-12 00:00      TO 2022-04-16 24:00
DEMURRAGE DEST                280.00 USD   107.000 DAY      29960.00 USD
     FROM 2022-04-17 00:00      TO 2022-08-01 24:00
     CONTAINER MADE AVAILABLE DATE    2022-08-01

TOTAL                                                       31,210.00 USD
                                                            =========

PAYMENT DATE:         JULY 26, 2022
```

The rules and practices of Hapag-Lloyd for charging detention and demurrage are published in the tariff:
https://www.hapag-lloyd.com/en/online-business/quotation/tariffs/rules.html
Please enter Tariff Code "RURE-002" and Rule No. "D" to find the relevant sections D02.01, D02.02, D02.03, D03.01, D04 and D05.
The charge details, which vary by location, are available here:
https://www.hapag-lloyd.com/en/online-business/quotation/detention-demurrage.html
Based on the information available to Carrier as of the date of this invoice: (i) the invoice is consistent with Federal Maritime Commission rules with respect to demurrage and detention; and (ii) Carriers performance did not cause or contribute to the underlying invoiced charges.

If you receive an EDI invoice, it is for advance notice only! The PDF invoice we send is the official invoice for payment.

---

All transports carried out by Hapag-Lloyd AG are subject to its General Conditions of Transport (which are available on request) provided that the services are not covered by Bill of Lading or Sea Waybill.

This invoice is issued on behalf of
Hapag-Lloyd AG
Ballindamm 25 - D-20095 Hamburg

Hapag-Lloyd (America) LLC.
5515 Spalding Drive
Peachtree Corners, GA 30092

 Hapag-Lloyd

```
I N V O I C E   NO.:           2121301594        PAGE    2 / 3
```

FOR SINGLE INVOICE AND DEMURRAGE PAYMENTS, PLEASE SUBMIT
PAYMENT VIA PAYCARGO ( www.paycargo.com ).

PHYSICAL CHECKS ARE NO LONGER ACCEPTED AT OUR HOUSTON,
KENNESAW,CHICAGO AND QSC ATLANTA OFFICES.

EFFECTIVE NOVEMBER 1, 2020, A FEE WILL APPLY FOR ANY MANUAL
CHECKS RECEIVED.

ACH PAYMENTS CAN BE MADE WITH THE FOLLOWING BANK INFORMATION

******************************************
JP Morgan Chase Bank
One Chase Manhattan Plaza, 7th Floor
New York, NY 10005

Acct: 400-947862
ABA: 021000021
Swift Code:  CHASUS33
Account name: Hapag-Lloyd (America), Inc.

Send remittance details via Excel/word format and
email details to HLWIRES@HLAG.COM
****************************************************

REVENUES CHARGES DISPUTES
If you deem that charges on this invoice need to be disputed; in order
to expedite the process, visit our Hapag-Lloyd website select Offices
& Local info North America, USA QSC, local info and go to customer
dispute request. Please complete the dispute template; following
available instructions and send completed template to
RNADISPUTES@hlag.com.  Customer Service contact 1-855-227-4612.


****************************************************
PLEASE VISIT OUR WEBSITE AT WWW.HLAG.COM FOR TRACKING
INFORMATION AND RELEASE.

SWB-NO.       HLCUIZ12201AVFW8


SHIPMENT      77827254
    22    PALLET, BOX
          2,176  KGM                          50.000   MTQ

CONTAINER    UACU   8376460
                              ONION CHOPPING ROBOT
                              4 MOTORIZED DONER FURNACE
                              3 MOTORIZED DONER FURNACE
                              HT892 BARBERS BENCH
                              HB335 WAITING CHAIR

All transports carried out by Hapag-Lloyd AG are subject to its General Conditions of Transport (which are available on request) provided that the services are not covered by Bill of Lading or Sea Waybill.

This invoice is issued on behalf of
Hapag-Lloyd AG
Ballindamm 25 - D-20095 Hamburg

INVP020I-015ED - Pdfletter

Hapag-Lloyd (America) LLC.
5515 Spalding Drive
Peachtree Corners, GA 30092

 Hapag-Lloyd

```
I N V O I C E   NO.:              2121301594            PAGE    3 / 3
                                  HS763 STAND
                                  HA545 COFFEE TABLE
                                  HA546 COFFEE TABLE
                                  HB728 COUNTER
                                  HM128 STOOL
                                  HC137 BARBER CHAIR
```

All transports carried out by Hapag-Lloyd AG are subject to its General Conditions of Transport (which are available on request) provided that the services are not covered by Bill of Lading or Sea Waybill.

This invoice is issued on behalf of
Hapag-Lloyd AG
Ballindamm 25 - D-20095 Hamburg

INVP0201-015ED - Pdlletter